K.K. HALL, Circuit Judge:
 

 William J. Tilley, Jr., is a debtor in a Chapter 11 bankruptcy proceeding. He appeals from an order of the district court affirming a determination of the bankruptcy court that an obligation contained in a separation agreement executed between Tilley and his ex-wife, Joyce Jessee, was “in the nature of alimony, maintenance or support” and, therefore, non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523. Because we find the bankruptcy court’s factual conclusion with regard to the central question of the parties’ mutual intent to be clearly erroneous, we reverse.
 

 I.
 

 Tilley and Joyce Jessee were married in 1963 in Bristol, Tennessee. They were divorced by decree dated August 27, 1971, entered by the Circuit Court of Washington County, Virginia. The decree incorporated a Post-Nuptial Agreement of the parties (the “agreement”) dated August 23, 1971. It is the nature of the obligations created by that agreement that is the subject of this appeal.
 

 Paragraph 3 of the agreement provided that the husband, during his lifetime and commencing on the fifth day of the calendar month following the granting of a divorce incorporating the agreement, would
 
 *1076
 
 pay alimony to the wife for her support and maintenance of $1,000.00 monthly, to continue until the wife’s death or remarriage or until the husband’s death. In paragraph 4, the husband further agreed to maintain hospitalization and medical insurance for the wife.
 

 In paragraph 5, which is the crux of the matter at issue, the parties agreed as follows:
 

 115.
 
 Property Interest of Wife in Husband’s Property and Estate.
 
 Husband will execute and deliver to Wife a note in the form of Exhibit 1 hereto payable to her order in the principal amount of $125,000 with interest at the rate of
 
 7%
 
 per annum, payable quarter-annually. Interest only shall be paid on this note during the first 7V2 years after its date, and thereafter payments of principal and interest payable quarter-annually shall be made for a period of
 
 Ilk
 
 years so that at the end of fifteen years after the date of the note, the entire principal and interest shall have been paid. To secure the payment of this note, Husband shall assign a life insurance policy or policies on his life aggregating $125,000. When payments of principal begin on this note, then the portion of the life insurance policy or policies assigned as security shall automatically reduce by the amount of such principal payments as they are made.
 

 Husband shall furnish to Wife a copy of the insurance policy or policies and a certificate certifying that the premiums have been paid, upon the execution of this agreement, and a like certificate on or before the due date of each succeeding premium. If such premiums are not paid by Husband, then Wife may pay such premiums if she elects to do so. The amount of any premiums on such life insurance policy or policies paid by the Wife shall be added to and constitute a part of the principal of said note. In consideration of the execution and delivery of said note secured by said life insurance policy, Wife agrees upon the execution of this agreement and its approval by the court in which her divorce proceeding is pending, to execute, acknowledge and deliver special warranty deeds conveying to Husband her interest in all real property owned by Husband and Wife as tenants in common or as joint tenants and/or tenants by the en-tireties with right of survivorship as at common law.
 

 The note provided for and was executed in the amount of $125,000 contemporaneously with the agreement. Payments were made as provided over a fourteen-year period, reducing the amount to the present balance of approximately $32,000.00.
 

 Tilley subsequently filed a petition for reorganization under Chapter 11 of the Bankruptcy Act, and sought to have Jes-see’s remaining claim included among those of other unsecured creditors subject to discharge. Jessee filed an adversary proceeding with the bankruptcy court seeking to have the note and sums owed under it declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(5).
 
 [1]
 

 On April 16, 1985, a hearing was held in the bankruptcy court on the adversary proceeding. Both Jessee and Tilley testified. Jessee testified that at the time of the divorce, Tilley was unable to provide more than $1,000.00 a month in support as required in the agreement. She further stated that her intent was to somehow obtain $2,000.00 a month because ill health rendered her otherwise unable to support herself. She asserted that the property transfer embodied in paragraph 5 of the agreement required payments sufficient to pro
 
 *1077
 
 vide the monthly income of $2,000.00 which she had originally sought. Jessee further testified that she used all sums received from Tilley, including the payments on the note, as support.
 

 Tilley testified that paragraph 5 of the agreement was drafted in response to his desire to regain full control of jointly held property. He further stated that he had treated the payments on the note as non-deductible for income tax purposes rather than as deductible alimony. Tilley conceded on cross-examination that he assumed Jessee was using all payments received for her support.
 

 Relying upon this Court’s opinion in
 
 In re Melichar,
 
 661 F.2d 300 (4th Cir.1981), the bankruptcy court held that the question of whether an obligation contained in a divorce settlement is non-dischargeable alimony turns principally on the intent of the parties at the time the agreement was executed. The substance of the agreement rather than the terms affixed to it controls the nature of the obligation. The court concluded, therefore, that it was required to look beyond the plain language of the agreement and examine additional evidence on the intent of the parties.
 

 In conducting its inquiry, the bankruptcy court found a number of factors significant. Jessee’s ongoing medical requirements and her perceived need to maintain her status in the community were seen as relevant to her claim that support beyond the $1,000.00 a month was intended in the agreement. The court found it particularly significant that the property settlement was secured by a life insurance policy rather than by the traditional mechanism of liens on the real property. Weighing these factors, the bankruptcy court determined that it was the intent of the parties at the time of the agreement that all periodic payments made by Tilley were to be maintenance and support for Jessee and, therefore, non-dischargeable under the Bankruptcy Code.
 

 Tilley appealed the bankruptcy court’s determination to the district court. Applying the “clearly erroneous” standard of appellate review originally set out in
 
 United States v. Gypsum,
 
 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), the court affirmed the bankruptcy court’s factual conclusion concerning the intent of the parties. The district court also noted that certain additional factors which have been utilized by other courts in analyzing the dischargeability of divorce obligations supported the bankruptcy court’s holding in this instance.
 
 [2]
 

 Tilley now appeals to this Court.
 

 II.
 

 On appeal, Tilley contends the factual findings below are “clearly erroneous.” Specifically, he argues that no evidence was ever presented probative of a
 
 mutual
 
 intent which was contrary to the clear language of the agreement. Tilley submits that at most, the testimony before the bankruptcy court demonstrated only Jes-see’s unilateral efforts to obtain additional support. We find merit in appellant’s argument.
 

 The analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code unless the complaining spouse,
 
 who has the burden of proof,
 
 demonstrates that the obligation at issue is “actually in the nature of alimony, maintenance or support.”
 
 See In re Morris,
 
 10 B.R. 448, 4 C.B.C.2d 332 (Bankr.N.D.Iowa 1981). Although this Court did hold in
 
 Melichar, supra,
 
 that the true intent of the parties rather than the labels attached to an agreement or the application of state law controlled, we did not thereby preclude an examination of a written agreement as persuasive evidence of intent.
 

 In this instance, the agreement did more than simply label payments as alimo
 
 *1078
 
 ny or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document. Indeed, as one member of this panel observed at oral argument, if this agreement does not reveal an intent to separate alimony from a property settlement, it is virtually impossible to envision a written agreement that could do so.
 

 While the agreement could not, as we have stated, be determinative on the issue, we conclude that it erected a substantial obstacle which Jessee was required to overcome. We further conclude that the additional evidence provided below was insufficient to meet that burden.
 

 Jessee’s testimony demonstrated
 
 her
 
 intent at the time of the divorce to obtain a certain level of support and her legitimate needs that prompted those efforts. There is, however, virtually nothing in her testimony that would illustrate the shared intent of both parties. Additionally, appellant testified that his desire was to gain control of property.
 
 [3]
 
 Appellant's admission that he is aware of Jessee’s current use of the payments has slight, if any, relevance to his intent at the time the agreement was executed.
 

 In sum, we can see nothing in the record which supports a finding that the parties mutually intended an obligation of any nature other than that expressed in their written agreement.
 
 [4]
 
 When an appellate court is left, as we are here, with “the definite and firm conviction that a mistake has been committed,”
 
 Anderson v. City of Bessemer City, N.C.,
 
 470 U.S. 564, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985), quoting
 
 United States v. Gypsum,
 
 333 U.S. 364, 394-95, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948), the lower court s conclusion cannot stand. We hold, therefore, that the obligation created by paragraph 5 of the post-nuptial agreement between appellant and appellee was not in the nature of alimony and, accordingly, should be dis-chargeable in bankruptcy.
 

 III.
 

 For the foregoing reasons, we conclude that the order of the district court affirming the determination of the bankruptcy court must be reversed.
 

 REVERSED.
 

 [1]
 

 . Section 523(a)(5) provides in pertinent part that:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
 

 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of ali--mony, maintenance, or support;
 

 [2]
 

 . The court cited with favor the case of
 
 In re Hawkins,
 
 25 B.R. 430 (E.D.Tenn.1982), which considered, in addition to mutual intent, (1) the financial circumstances and needs of the parties when the obligation was created; (2) the function, purpose and substance of the obligation; and (3) whether the obligation is associated with the maintenance or support of the non-debtor spouse.
 

 [3]
 

 . We do not find it significant that the property settlement utilized the unconventional mechanism of life insurance as a means of guaranteeing compensation. Whether secured by lien or life insurance, the obligation created by the property settlement would continue despite the remarriage of the wife or death of the husband in direct contrast to the usual operation of marital support payments.
 

 We also find appellant’s position strengthened by the fact that he has consistently treated the payments as a non-deductible expense. We find it hard to believe that he would have foregone the substantial deductions available if he had intended to create a support obligation.
 

 [4]
 

 . Because we conclude that mutual intent to create a support obligation was not shown in this instance, we express no position with regard to the importance of the additional factors cited by the district court. Intent clearly remains the threshold that must be crossed before any other concerns become relevant.