**In re James M. TAYLOR, Jr.**

**Bankruptcy No. 99–32959–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 26, 1999.

See also 497 S.E.2d 916.

James E. Kane, Chaplin, Papa & Gonet, Richmond, VA, for Debtor.

William C. Parkinson, Jr., Richmond, VA, for Peggy Ann Young Taylor.

Robert E. Hyman, Richmond, VA, Chapter 13 Trustee.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

An evidentiary hearing was held August 18, 1999, on the objection of Peggy Ann Young Taylor, debtor's former wife, to confirmation of the debtor's Chapter 13 plan dated June 2, 1999. For reasons stated in this memorandum opinion, the objection to confirmation will be sustained.

### Facts

The debtor, Dr. James M. Taylor, Jr., and the movant, Peggy Ann Young Taylor, were previously married and had four children. They were divorced by a decree of the Circuit Court for the County of Chesterfield, Virginia, entered May 8, 1997. The divorce decree ordered the debtor to pay Ms. Taylor $500.00 per week for child support plus provide health and dental insurance for the children, $2,000.00 per month for spousal support and an additional lump sum spousal support payment of $17,219.00. The lump sum spousal support amount equaled Ms. Taylor's total bill from Jonathan M. Murdoch–Kitt, her divorce attorney. (Ms. Taylor specifically requested that "any award [of attorney fees] be in the form of a lump sum of alimony or equitable distribution, since Dr. Taylor said he will go bankrupt.") The circuit court also awarded Ms. Taylor $14,982.88 for attorney fees due to Charles J. McCall, an attorney that she retained for his expertise in complex real estate, corporate, taxation, and bankruptcy issues.

The debtor appealed the circuit court award. Among the matters that the

debtor appealed were issues related to the award in favor of Ms. Taylor for spousal support, child support, and attorney fees. The Court of Appeals of Virginia affirmed the circuit court's award of attorney fees, but held that the circuit court erred in delineating an award of attorney fees as a lump sum spousal support award. The court of appeals stated:

> In the instant case, the trial court examined the required factors and awarded wife periodic spousal support. An additional award of attorney's fees as lump sum spousal support offends the statute and threatens to blur the distinction between the two types of awards. Wife's attempted end run around potential bankruptcy proceedings was improper.[1] Consequently, we hold that the trial court erred in awarding attorney's fees as an award of "lump sum spousal support."

On April 21, 1998, the court of appeals remanded the case to the circuit court to characterize the previously designated lump sum spousal support award as attorney fees and directed the circuit court to further award to Ms. Taylor attorney fees and costs related to the appeal.

On remand, the Chesterfield Circuit Court, in addition to recharacterizing the lump sum spousal support as attorney fees and determining reasonable attorney fees and costs related to the appeal, compelled the debtor to show cause why he should not be fined or imprisoned for violating the final divorce decree for failure to make payments and compelled him to pay her attorney fees and costs related to that proceeding. On September 28, 1998, the circuit court entered an order that required the debtor to pay attorney fees and costs to the plaintiff as follows: $17,219.00 on account of Murdoch–Kitt's attorney fees and costs, $14,982.88 on account of McCall's attorney fees and costs, $7,640.14 on account of Ms. Taylor's reasonable attorney fees and costs incurred in the appeal. The court also awarded $3,488.00 on account of her reasonable attorney fees and costs incurred in the proceedings on contempt and show cause matters. Finally, the court entered an order that required the $500.00 bond posted by the debtor to perfect his appeal to the court of appeals released to Ms. Taylor with the debtor given credit against the various awards ordered by the appeal.[2]

The debtor filed a chapter 13 petition on April 24, 1999, and filed a chapter 13 plan on June 2, 1999. His schedules indicate that the only unsecured priority claims are for state and federal taxes. The schedules also include a $90,072.00 unsecured nonpriority claim by Peggy Ann Young Taylor for a "domestic matter." Thus, debtor's plan treats the various divorce awards as unsecured claims.

Ms. Taylor objects to confirmation of the debtor's chapter 13 plan on the following grounds: (1) Ms. Taylor is a priority creditor under 11 U.S.C. § 507(a)(7), and the debtor's plan fails to comply with 11 U.S.C. § 1322(a)(2) in that it fails to provide for the payment in full of her priority claim; (2) the debtor's plan fails to comply

---

1. It was also ineffective and probably unnecessary. "Whether a debt is a support obligation, and not dischargeable ... is a matter of federal law. A [bankruptcy] court is not bound to accept a divorce decree's characterization of an award [...]." *Mosley v. Mosley*, 19 Va.App. 192, 196, 450 S.E.2d 161, 164 (1994). Further, "[m]ost courts have classified an award of attorney's fees in a divorce judgment as a nondischargeable debt in the category of alimony, maintenance, and support under [11 U.S.C.] § 523(a)(5)." *[Silansky v. Brodsky, Greenblatt & Renehan] [ (]In re Silansky[) ]*, 897 F.2d 743, 744 (4th Cir.1990) (judgment for fees owed to spouse's attorney rather than directly to spouse was nonetheless a nondischargeable debt). Moreover, a discharge in bankruptcy may be "a sufficient change in circumstances to justify modification of the spousal support award." *Dickson v. Dickson*, 23 Va.App. 73, 77, 474 S.E.2d 165, 167 (1996).

2. Ms. Taylor's proof of claim filed on September 8, 1999, does not include the $3,488.00 claim nor the $500.00 credit for the bond applied. However, the parties have not raised any issue as to these items.

with 11 U.S.C. § 1322(a)(1) in that it fails to submit all of the debtor's disposable income to the plan; (3) the debtor's plan is not proposed in good faith in violation of 11 U.S.C. § 1325(2)(3); and (4) the debtor's plan violates 11 U.S.C. § 1325(a)(4) in that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured creditor is less than the amount that would be paid on each claim if the estate of the debtor were liquidated under chapter 7.

### Conclusions of Law

■ As a preliminary procedural matter, debtor's counsel questions whether Ms. Taylor is a proper party to this proceeding. At the time debtor filed bankruptcy, Ms. Taylor was liable to attorneys Murdoch–Kitt and McCall. Because the divorce decree requires the debtor to make payment to Ms. Taylor rather than attorneys Murdoch–Kitt and McCall, the debtor has standing but attorneys Murdoch–Kitt and McCall do not. *See Macys v. Macys (In re Macys)*, 115 B.R. 883, 894 (Bankr. E.D.Va.1990) (holding attorney for debtor's former spouse in divorce proceeding lacked standing to claim nondischargeabili-

ty of fees awarded to former spouse in divorce proceeding because judgment in divorce proceeding was in favor of former spouse and not attorney).

■■ Although Ms. Taylor states several grounds of objection to the plan, the essential basis for her objection to confirmation is that the plan fails to comply with Bankruptcy Code § 1322(a)(2) because it does not provide for full payment of her priority claim. Section 1322(a)(2) requires the plan to pay priority claims under § 507 in full.[3] Section 507(a)(7)(B) gives priority status to alimony, support and maintenance payments.[4] This court must therefore determine whether the attorney fees are actually in the nature of support.

■ Section 507(a)(7) was added by the Bankruptcy Reform Act of 1994. *See* Pub.L. No. 103–394 § 304(c). The language of § 507 parallels that of § 523(a)(5), which excepts from discharge debts in the nature of alimony and child support.[5] *See In re Crosby*, 229 B.R. 679, 681 (Bankr.E.D.Va.1998). "Notwithstanding the fact that the issue was brought under § 507(a)(7)(B), the plethora of case law discussing whether debts are 'actually

3. Section 1322(a)(2) states:

> (a) The plan shall—
> . . .
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

4. Section 507(a)(7) states:

> (a) The following expenses and claims have priority in the following order:
> . . .
> (7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—
> . . .

> (B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

5. Section 523(a)(5) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—
> . . .
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
> . . .
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support;

in the nature of alimony, maintenance or support' under § 523(a)(5) is applicable and useful precedent in determining whether such debts should receive priority treatment." *See In re Grady,* 180 B.R. 461, 464 (Bankr.E.D.Va.1995); *accord In re Crosby,* 229 B.R. at 681.

 Section 523(a)(5) excepts from discharge obligations of a debtor to a spouse or former spouse for alimony, maintenance, or support arising out of a separation or divorce. *See* 11 U.S.C. § 523(a)(5); *In re Macys,* 115 B.R. at 889. However, a debtor's liability which represents a spousal property settlement is not within the exception and is therefore dischargeable under § 523(a)(5). *See id.*

 "To determine whether an attorney fee award is nondischargeable, the [c]ourt must first determine whether the debt connected with the fees is nondischargeable." *Roberson v. Roberson (In re Roberson),* 187 B.R. 159, 163 (Bankr. E.D.Va.1995) (fee award held nondischargeable where integrally linked to the state court's award of child support); *accord Bulman v. Bulman (In re Bulman),* 123 B.R. 24, 28 (Bankr.E.D.Va.1990) (fee award held nondischargeable where sufficiently related to order of support payments). The burden is placed upon the objecting spouse to prove that a debt connected with attorney fees is nondischargeable under § 523(a)(5) because it is "actually in the nature of alimony, maintenance or support." *See Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986).

 Whether the debt connected with the attorney fees is nondischargeable turns on bankruptcy law and not state law; the bankruptcy court must make an independent determination of what constitutes alimony, maintenance or support under federal standards. *See In re Macys,* 115 B.R. at 890. However, there is a tension between this principle and the fact that there is no federal law of domestic relations. *See id.* Under federal bankruptcy law, the nature of an award is based upon

the intent of the parties where there is an agreement or, as in the instant case, upon the intent of the state divorce court in making the award. *See id.* (citing *Long v. West (In re Long),* 794 F.2d 928, 931 (4th Cir.1986)). State court labels attached to a spousal obligation, while not binding, may and should be considered by the bankruptcy court. *See In re Long,* 794 F.2d at 931; *Tilley,* 789 F.2d at 1077; *Melichar v. Ost (In re Melichar),* 661 F.2d 300, 303 (4th Cir.1981); *In re Macys,* 115 B.R. at 890. The bankruptcy court may look to a variety of sources to ascertain the intent of the state court, including all pleadings, orders, transcripts, and the language of the divorce decree. *See Bangert v. McCauley (In re McCauley),* 105 B.R. 315, 319 (E.D.Va.1989); *In re Grady,* 180 B.R. at 465. In this case, the evidence before the court is the final decree from the Chesterfield Circuit Court, the opinion of the Court of Appeals of Virginia, and the circuit court's order on remand.

 Federal courts in the Eastern District of Virginia have used two modes of analysis to discover the intent behind a divorce court's award of attorney fees to a particular spouse. One mode looks at the apparent function served by the award as dispositive evidence of the state court's intent. This mode of analysis focuses upon the relative finances of the two former spouses at the time of the award and, particularly, whether it looks as though the state court took any such imbalance into consideration. *See Zerbe v. Zerbe (In re Zerbe),* 161 B.R. 939, 941 (E.D.Va.1994); *Foiles v. Taylor (In re Foiles),* 174 B.R. 692, 696 (E.D.Va.1994), *aff'd,* 62 F.3d 1414, 1995 WL 463101 (4th Cir.1995). The other mode looks at the nature of the underlying legal services connected with the attorney fees. Thus while litigation involving an attempt to obtain alimony or child support may give rise to a "support-like" fee award, a court battle solely over property division or custody of a child may not. *See In re Roberson,* 187 B.R. at 163; *Bulman v. Bulman (In re Bulman),* 123 B.R. 24, 28

(Bankr.E.D.Va.1990). Similarly, those attorney fees which may be viewed as inextricably intertwined with the litigation of nondischargeable support are said themselves to qualify for nondischargeability under § 523(a)(5). *See Roberson,* 187 B.R. at 163; *Ewing v. Ewing (In re Ewing),* 180 B.R. 443, 446 (Bankr.E.D.Va.1994).

This court will use both modes of analysis, balancing the apparent function of the award and relative finances of the litigants with the nature of the legal services in order to find the intent behind the award of fees.[6]

### A. Apparent Function of the Award and Relative Finances of the Litigants.

 Section 523(a)(5) "departs from the general policy of absolution or fresh start in order to 'enforce an overriding public policy favoring the enforcement of familial obligation.'" *Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895, 897 (4th Cir.1994) (quoting *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 721 (10th Cir.1993)); *In re Roberson,* 187 B.R. at 163. The Fourth Circuit has observed that "[m]ost courts have classified an award of attorney fees in a divorce judgment as a nondischargeable debt in the category of alimony, maintenance, and support under § 523(a)(5)." *Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky),* 897 F.2d 743, 744 (4th Cir.1990); *accord Hirschler, Fleischer, Weinberg, Cox & Allen v. El–Amin (In re El–Amin),* 145 B.R. 836, 838 (Bankr.E.D.Va.1991) ("Bankruptcy courts have usually found that attorney fees awarded on a spouse's behalf are nondischargeable support rather than property division.").

 In analyzing the relative finances of the litigants, "the attorney's fee award is deemed nondischargeable if the award itself reflects a balancing of the parties' financial needs." *See Joseph v. J. Huey O'Toole, P.C. (In re Joseph),* 16 F.3d 86, 88 (5th Cir.1994).[7] Considerations such as the disparity in earning power of the parties, their relative business opportunities, the physical condition of the parties, their probable future need for support, the educational background of the parties, and the benefits they would have received had the marriage continued, inform this inquiry. *See id.*[8]

 In this case, in light of the relative finances of the litigants, the award of attorneys fees appears to reflect the state courts' balancing of the parties' needs. The court of appeals noted that the circuit court found "that Mrs. Taylor is in need of support and that Mr. Taylor has the ability to provide that support." Although Ms. Taylor has experience teaching and bookkeeping, she last worked on a part-time basis in 1985. Since then she has provided full-time care for the parties' four young children. The most she earned in one year was $15,000.00. Ms. Taylor's earning power is unlikely to improve significantly after the divorce while she is caring for the four young·children. She has no independent resources other than her IRA, and she has no assets other than the parties' jointly-owned condominium in which Dr. Taylor currently resides. Ms. Taylor retained physical custody of their four children, which surely strained her ability to pay for costly litigation.

In contrast, the debtor's earnings power and relative business opportunities as a

---

6. The Fourth Circuit in a relatively recent unpublished opinion applied both modes of analysis. *See Taylor v. Foiles (In re Foiles),* 62 F.3d 1414, 1995 WL 463101 (4th Cir.1995) (unpublished opinion).

7. The Fourth Circuit quoted this language in a relatively recent unpublished opinion. *See In re Foiles,* 62 F.3d 1414, 1995 WL 463101 at *3 (unpublished opinion).

8. The Fourth Circuit has cited this opinion for the proposition that the "[d]isparity in earning power is a factor to be considered when determining whether an award of attorney's fees is in the nature of alimony, maintenance, and support." *See D'Agostino v. Genovese (In re Genovese),* 96 F.3d 1438, 1996 WL 516160, at *2 (4th Cir.1996) (unpublished opinion).

self employed doctor of chiropractic medicine is much greater. The parties' joint tax returns show an adjusted gross income above $200,000.00 for each year from 1989 to 1992. Dr. Taylor deserted his wife in 1992, and his reported income in subsequent years dropped sharply. He explains the recent reverses in his chiropractic practice as the result of an attempt to expand into rehabilitation along with unanticipated changes in reimbursement practices under managed care. In light of the disparity in the parties' earning power and their relative business opportunities, this court finds that the state courts' awards of attorney fees reflect a balancing of the parties' needs. This supports a ruling that the awards are in the nature of support and therefore entitled to priority.

B. The Nature of the Legal Services.

The second mode of analysis used by federal courts to ascertain the state court's intent in awarding attorney fees is to examine the nature of the legal services which gave rise to the fees at issue. As the court of appeals opinion demonstrates, Virginia law makes a very clear distinction between attorney fees and the underlying debt connected with the fees. This court finds that the circuit court attempted to make a distinction between the characterization of attorney fees awarded Ms. Taylor for attorneys Murdoch–Kitt and McCall. Ms. Taylor specifically requested that "*any* award [of attorney fees] be in the form of a lump sum of alimony or equitable distribution," yet the circuit court only characterized the $17,219.00 awarded for Murdoch–Kitt's divorce work as a "lump sum spousal support payment." It simply characterized the $14,982.88 awarded for McCall's expertise in complex real estate, corporate, taxation, and bankruptcy issues, as "attorney fees."

The Court of Appeals of Virginia reversed the circuit court's characterization of the attorney fees awarded to Ms. Taylor for Murdoch–Kitt's divorce work as lump sum spousal support because "it offend[ed] the state statute and threaten[ed] to blur the distinction between spousal support and attorney's fees." The court of appeals noted that in setting spousal support under Virginia law, a circuit court must follow a specific statutory process and must find special circumstances or compelling reasons when it awards a lump sum for spousal support. In contrast, the key to a proper award of attorney fees is whether it is "reasonable under all of the circumstances." Rather than following a statutory scheme, the circuit court determined whether to award attorney fees by considering the circumstances of the parties and the equities of the entire case. Consequently, the court of appeals held that the circuit court erred in awarding attorney fees as an award of "lump sum spousal support." However, in holding that the award should not have been labeled as spousal support under state law, the court of appeals was cognizant that neither the divorce decree's characterization of the award nor that of the court was binding on a bankruptcy court. On remand, the circuit court recharacterized the award only as attorney fees.

The circuit court's intent in referring to the award to Ms. Taylor for attorney McCall's expertise in complex real estate, corporate, taxation, and bankruptcy issues, as "attorney fees" is more enigmatic. While this court finds that the circuit court attempted to make a distinction between the attorney fees awarded for Murdoch–Kitt and McCall, it did not characterize McCall's attorney fees as connected with support or spousal property settlement. The state court decisions, by themselves, are ambiguous concerning the intent of this award. Thus the evidence before this court is somewhat inconclusive as to whether McCall's services related to property settlement, support, or both.

▆▆▆▆ Finally, the award of attorney fees incurred in the appeal and in the proceedings on contempt and show cause matters were related to Ms. Taylor's attempt to enforce the final decree which included support. Case law clearly indi-

cates that it is well within the province of the bankruptcy court to find a fee award to be in the nature of alimony, maintenance, or support even though the fee at issue was for services in the divorce litigation where both property and support were at issue. *See In re Grady,* 180 B.R. at 465; *In re Bulman,* 123 B.R. at 27. The court finds that this fee award constituted support because it was so integrally related to contested issues that included support.

In conclusion, after balancing the apparent function of the award and the relative finances of the litigants with the nature of the legal services, the court holds that each award of attorney fees was sufficiently connected with the ascertaining of alimony, maintenance, or support. Accordingly, this indebtedness is entitled to priority status under § 507(a)(7)(B), and the court will sustain the objection and deny confirmation of the debtor's chapter 13 plan because it fails to comply with § 1322(a)(2).

An order consistent with this opinion will be entered.