O’BRIEN,
dissenting:
Because the majority decision is contrary to our precedent and the clearly expressed intent of both parties at the time they entered into their divorce decree and settlement agreement, I must respectfully dissent. “[T]he critical inquiry is the shared intent of the parties at the time the obligation arose.” Sampson v. Sampson, (In re Sampson), 997 F.2d 717, 723 (10th Cir.1993) (citing Tilley v. Jessee, 789 F.2d 1074, 1078 (4th Cir.1986)) (emphasis added). Both the settlement agreement and the circumstances point but one way, Mrs. Cline agreed with Mr. Cline to waive spousal support in exchange for a debt-free new beginning, a one-time property settlement payment, and substantial child support payments. Although a discharge of the settlement payment in Mr. Cline’s bankruptcy substantially changes Mrs. Cline’s payoff, it does not change the parties’ intent at the time of the settlement agreement.
We “begin with the assumption that dis-chargeability is favored under the Code.” Tilley, 789 F.2d at 1077. Mrs. Cline must prove by a preponderance of the evidence that (1) she and Mr. Cline “intended the obligation as support and [2] that the obligation was, in substance, support.” Sampson, 997 F.2d at 723 (emphasis added). *134 While we look to both the parties’ agreement and the surrounding circumstances, our inquiry “does not turn on one party’s post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted.” Id.
“[A] written agreement [between the parties] is persuasive evidence of intent.” Tilley, 789 F.2d at 1077. “[I]f the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control.” Yeates v. Yeates (In re Yeates), 807 F.2d 874, 878 (10th Cir.1986). In this case, there can be no doubt regarding the parties’ written intent.
The testimony at Mr. Cline’s bankruptcy hearing revealed a carefully drafted settlement agreement listing the $250,000.00 payment under the Property Settlement section. The settlement agreement clearly states the payment was intended to distribute a potential award in a lawsuit. Child support was addressed in a separate section. And importantly, yet another section clearly and affirmatively waived both parties’ rights to spousal support.[1] Even the bankruptcy court recognized the affirmative waiver of alimony contained in the settlement agreement “couldn’t be more definitive.” (R.App. at 190). Thus, under our own precedent, there is no question the settlement agreement supplies compelling evidence that the mutual intent of the parties creates a “substantial obstacle” to the success of Mrs. Cline’s claim. Cf. Sampson, 997 F.2d at 723 (Due to the agreement’s structured drafting, the lack of testimony regarding shared intent, and the express language of the agreement, we found “compelling evidence that the parties intended the obligation as maintenance.”).
The surrounding circumstances do not overcome this compelling evidence of intent. Goin v. Goin (In re Goin), 808 F.2d 1391, 1392-93 (10th Cir.1987). According to Goin, we first look to whether *135 the agreement provides “explicitly for spousal support.” Id. at 1392. If it does not, we “may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support.” Id. (emphasis added). The majority concludes there was no explicit provision for spousal support. Contrary to the majority’s assessment, however, the agreement specifically and explicitly provided for spousal support; it was waived, ie. $ 0. It is important to recognize Mrs. Cline agreed to this provision only after seeking advice from two attorneys — her attorney and a well-known bankruptcy attorney — in anticipation of her husband’s bankruptcy filing. This is yet another reason to give weight to the written agreement in that we look to the surrounding circumstances primarily because “it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.” Gianakas v. Gianakas (In re Gianakas), 917 F.2d 759, 762 (3d Cir.1990) (quotations omitted). The bankruptcy was clearly contemplated at the time of the settlement agreement. In addition, the Majority presumes Mrs. Cline’s need for support without any exploration of her actual resources.
As to the second Goin factor — the presence of minor children and an imbalance of income — there was no determination in this case that the child support was inadequate to support the family, as was found in Goin. Goin, 808 F.2d at 1393 (Determining “$350 a month child support payments were not sufficient to provide the spouse and children with the standard of living to which they had grown accustomed.”). Neither was there “evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as food, housing and transportation” as there was in Yeates. 807 F.2d at 879; see also Williams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir.1983) (“Provisions to pay expenditures for the necessities and ordinary staples of everyday life may reflect a support function.”) (quotations omitted); Gianakas, 917 F.2d at 764 (“[Provision for the family home is, together with food and transportation, one of the traditional components of support and maintenance.”).
The third and fourth factors — installment payments terminating on remarriage or death — are equally inapplicable in this case. The payment was intended to be a one time event and the obligation did not terminate should Mrs. Cline remarry or die. Indeed, because Mrs. Cline did not know when the payment would be made within the next year, the funds could not function as a reliable source of ongoing income. In addition, the settlement agreement expressly states the function of the payment at the time of the divorce was to reduce to a sum certain the income from pending lawsuits in which the expectations of the actual recovery “changed vastly,” waxing and waning over a period of time. (R.App. at 110.)
Nonetheless, the majority presumes the payment is support because Mrs. Cline did not have the education or experience to secure a job which paid sufficiently to maintain her lifestyle. However, without inquiry into her resources, that is pure speculation — hardly a reliable basis for a decision. What we know is, with the assistance of divorce counsel and bankruptcy counsel, Mrs. Cline agreed to waive exactly what she now seeks. Competent adults must be left with the consequences of their decisions, particularly when those decisions involve the evaluation of uncertain events. When events turn out differently than anticipated, the law does not allow one contracting party to choose another course of action at the expense of the other. Here, the parties designated the *136 $250,000 payment as a property settlement in spite of the obvious tax advantage to the husband in designating it support. When asked by the bankruptcy judge why she waived alimony, Mrs. Cline responded because she understood support would come “partially from other methods; through having a debt-free life and, you know, no bills to pay and child support to help us.”[2] (Id. at 95.) Notably absent from her explanation is an intention to rely on the $250,000 payment. I would find her candid response compelling evidence of the settlement agreement’s accurate documentation of the parties’ mutual intent and the essential function of the $250,000 payment as a property settlement. Coupled with her express waiver of spousal support, it should be determinative.
With the benefit of 20/20 hindsight, the bankruptcy judge probably reached a fair result. It is one I would embrace if it were not contrary to law. However, in the face of the settlement agreement it is not enough to merely say Mrs. Cline needed support. Mr. Cline was not required to prove the obligation was as labeled, a property settlement. Instead, it was Mrs. Cline’s burden to show the parties’ intended the payment, in effect, to be support. She did not do so. Under our case law, I see nothing that overcomes the substantial obstacle created by the compelling evidence of the parties’ mutual intent as evidenced by the settlement agreement. Consequently, I am “left with the definite and firm conviction that a mistake has been made.” In re Miniscribe Corp., 309 F.3d 1234, 1240 (10th Cir.2002) (quotations omitted). I would reverse the decision of the bankruptcy court and remand for further proceedings.

. Research has revealed no case law finding a support obligation when there is an express waiver of alimony and no specific language providing the property settlement is in lieu of alimony or spousal support. Indeed, the cases point in the opposite direction. See, e.g., Yeates, 807 F.2d at 879 (“[E]ven though one paragraph of the agreement purports to waive any right to alimony, the paragraph in which the debtor agrees to assume the Trans-america debt specifically states that such assumption was made 'in consideration of Plaintiff waiving her right to alimony.' ”); Osborne v. Osborne (In re Osborne), 262 B.R. 435, 443 (Bankr.E.D.Tenn.2001) (“[T]he court is persuaded that the waiver of alimony language in paragraph 20 of the [Marital Dissolution Agreement] expresses the parties' intention that the Debtor’s assumption of the three disputed joint debts not be in the nature of support. Both parties were represented by counsel throughout the divorce proceedings who agreed on behalf of the Plaintiff and Debtor to the alimony waiver language.”); Dennison v. Hammond (In re Hammond), 236 B.R. 751, 763 (Bankr.D.Utah 1998) (“The Decree was entered pursuant to the parties’ stipulation and specifically and clearly provides that Dennison waived her right to alimony. The Decree, on its face, does not support Dennison's allegation that she waived alimony 'in lieu' of increased ... [pjayments.”); Fuda v. D’Atria (In re D‘Atria), 128 B.R. 71, 77 (Bankr.S.D.N.Y.1991) ("[T]he parties in the instant case have unequivocally waived in writing any right to claim from the other alimony, maintenance or support. The plaintiff cannot overcome her own self-imposed waiver.”); Casler v. Casler (In re Casler), 94 B.R. 741, 744 (Bankr.M.D.Fla.1988) ("The most important and indicative fact supporting the conclusion that the obligation is dis-chargeable is the Plaintiff’s express waiver of all alimony rights.”); In re Lang, 88 B.R. 447, 448 (Bankr.S.D.Fla.1988) (express waiver of alimony made "the actual intent of the parties ... clear as a bell.”); Brunson v. Payne (In re Payne), 13 B.R. 481, 482 (Bankr.Nev.1981) (in the absence of other evidence, an express waiver of alimony by the Plaintiff establishes an intent to treat the payment as a property settlement).

. The settlement agreement provided for substantial child support and Mr. Cline's assumption of all consumer and tax debt. Mr. Cline also provided Mrs. Cline with her choice of their former home or a new home. Mrs. Cline chose to reside in a new home paid for by the sale of several properties owned by Mr. Cline’s businesses. Mrs. Cline received over $8,000.00 in cash at the time of closing.