**In re John D'ATRIA, Debtor.**

**Mirella FUDA, Plaintiff,**

v.

**John D'ATRIA, Defendant.**

**Bankruptcy Nos. 90 B 20672, 90 Adv. 6163.**

United States Bankruptcy Court, S.D. New York.

June 10, 1991.

Cole, Schotz, Bernstein, Meisel & Forman, P.A., Hackensack, N.J., for Mirella Fuda; Jeffrey S. Feld, of counsel.

Fink, Weinberger, P.C., White Plains, N.Y., for debtor; Richard Koral, of counsel.

DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF CERTAIN OBLIGATIONS AND TO DENY DISCHARGE

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The plaintiff, Mirella Fuda, is the former wife of the individual debtor, John D'Atria, in this voluntary, Chapter 11 case. She has

filed a complaint with this court objecting to the debtor's discharge under 11 U.S.C. § 727(a)(2) and to the dischargeability of her claims against him pursuant to 11 U.S.C. § 523(a)(2), (4), (5) and (6). The following findings of fact and conclusions of law are made following a hearing on the merits of the adversary proceeding.

## FINDINGS OF FACT

1. On July 11, 1990, the debtor filed with this court his voluntary petition for relief under Chapter 11 of the Bankruptcy Code and proceeded as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. On July 20, 1989, the plaintiff and the debtor were divorced. As part of their divorce, the parties entered into a negotiated Property Settlement and Support Agreement (the "Agreement"), whereby the plaintiff agreed to receive no alimony or support and, instead, the parties agreed to an equitable division of their assets.

3. At the time of the Agreement, the debtor owned 51% of the shares of Showcase Tile, Inc. and the plaintiff owned 49% of the shares. Showcase Tile, Inc. was a corporation formed by the plaintiff and the debtor in 1982 as a distributor of floor and wall tiles in the retail and wholesale business. The corporate business was located at 455 Route 17 in Ramsey, New Jersey. It also had business locations in Middletown and Nanuet, New York and Union, New Jersey. Showcase Tile, Inc. later opened up a store in Paramus, New Jersey.

4. Pursuant to the Agreement, which was incorporated in their divorce judgment, in lieu of alimony and support, the plaintiff agreed to transfer her 49% interest in Showcase Tile, Inc. to the debtor and the debtor agreed to transfer to the plaintiff all of his interest in certain real estate, including his interest in real estate in Eastchester, New York, and the tile store and inventory in Ramsey, New Jersey, as well as their former marital residence. The plaintiff's former wife assumed the first mortgage debt with respect to the marital residence and the debtor assumed the second mortgage debt covering both the marital residence and the Ramsey store in the amount of $80,000.00. The debtor agreed to pay the second mortgage debt in the sum of $80,000.00 from the proceeds of sale from certain real estate his corporation, Showcase Tile, Inc., owned in Union, New Jersey (the "Union property"). In the event the sale of the Union property did not occur, the debtor agreed to pay the second mortgage debt on the Ramsey store in the sum of $80,000.00 from other assets available to him. The Union property was sold, but the debtor failed to pay the $80,000.00 second mortgage.

5. Pursuant to subparagraph (r) in the Agreement dealing with the equitable distribution of their assets, the debtor agreed to a restrictive covenant in favor of Fuda Tile, Inc., which is a corporation owned by the plaintiff's family and is engaged in the same line of business as Showcase Tile, Inc. Fuda Tile, Inc. operates a chain of marble tile stores. The plaintiff has a 10% interest in her family's tile business. The restrictive covenant in the equitable distribution portion of the Agreement provides:

(r). The husband agrees that he will not operate a ceramic tile store in a geographical radius of seven (7) miles from any presently owned Fuda Tile location limited to Howell, Flemington, Eastchester, Elmwood Park, Ridgefield, Bogota and Ramsey (sic) as well as from 455 Route 17 for a period of five (5) years.

6. The Agreement contained a separate Article II entitled "Spousal Support" wherein the plaintiff expressly waived support, alimony or maintenance as follows:

## ARTICLE II

### SPOUSAL SUPPORT

Each party, having had his or her respective rights and duties fully explained to them by their respective counsel, in consideration of all the matters and things assigned and transferred to each by the other, and in consideration of the other promises contained herein, does hereby forever release, waive and discharge the other from right, duty or obligation for alimony, support or mainte-

nance either temporary or permanent. Regardless of any future changes in circumstances (sic) to either or both parties, each party does expressly and forever waive any right to seek support, alimony or maintenance, either on a temporary or permanent basis.

7. After the entry of the final judgment of divorce on July 20, 1989, in the state court in New Jersey, the debtor's corporation, Showcase Tile, Inc., opened a tile store in Paramus, New Jersey. At that time, Showcase Tile, Inc., was also a debtor in possession, having filed with this court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 30, 1989.

8. Following a post-divorce judgment application to the New Jersey court by the plaintiff, the state court concluded on March 28, 1990 that the debtor had failed to pay the $80,000.00 second mortgage on the Ramsey store, which was also secured by a lien on the marital residence. The state court directed that a judgment be entered against the debtor and in favor of the plaintiff in the amount of $80,000.00. *D'Atria v. D'Atria*, 242 N.J.Super. 392, 576 A.2d 957 (1990).

9. The state court also found that the debtor's corporation, Showcase Tile, Inc., which was then in a Chapter 11 case in this court, had violated the seven-mile restrictive covenant in the Agreement by opening a tile store in Paramus, New Jersey, within seven miles of a store operated by the Fuda Tile chain. The state court recognized that it could not issue orders with respect to the debtor in possession, Showcase Tile, Inc., while it was under the aegis of the federal bankruptcy jurisdiction, but that it could issue directions regarding John D'Atria, who had not yet filed for bankruptcy relief. Hence, the state court ordered the appointment of a special fiduciary of the personal estate of the debtor. The functions of the special fiduciary were described as follows:

In this case, the opportunity for defendant to camouflage himself, chameleon-like, within the orbit of the Bankruptcy Court, makes a compliance package to be imposed by the Court rather difficult. Nevertheless, if the January 19, 1990 Order is to have any meaning, this Court must proceed vigorously and forthrightly, but with due regard to the zones of influence exercised by it and the Bankruptcy Court. For the purpose of effectuating the January 19, 1990 Order, the Court enters the following relief against defendant and in favor of plaintiff: The Court shall appoint an attorney to act as the custodial receiver/fiscal agent/special fiduciary of the personal estate of defendant in so far as it relates to Showcase Tile, Inc., and its affiliates, and bearing upon the establishment and operation of the Showcase Tile Paramus store. The special fiduciary shall be entitled to seize and control all of the shares of stock of John D'Atria in Showcase Tile, Inc. or any of its affiliates which have an interest in the management and operation of the Paramus store. The special fiduciary shall be entitled to take over in the place and stead of defendant as an officer and director in Showcase Tile, Inc. or any of its affiliates which are involved in the operation of the Paramus store. Finally, the special fiduciary shall, to the extent that it is capable of doing so in accordance with any necessary permission of the Bankruptcy Court, pay into a trust fund to be established by the special fiduciary, any and all dividends, compensation, salary, travel expenses, and other sums that would be due and owing from Showcase Tile, Inc. or any of its affiliates to defendant, for work performed or profits derived at the Showcase Tile Paramus store. The special fiduciary shall be compensated at the rate of $200.00 per hour and shall be paid either by defendant, or out of the trust fund which the special fiduciary creates. The special fiduciary shall be permitted to make an application to the Bankruptcy Court in an attempt to be recognized by that Court as the special fiduciary for the personal estate of John D'Atria. Whether the Bankruptcy Court will recognize this status and whether it will make any difference to the Bankruptcy Court in determining defendant's

status as debtor-in-possession, or in any other way, obviously will be left to that Court. It is not this Court's function (and it is not intended to be any display of arrogance, or disrespect) to displace the Bankruptcy Court in fair administration of the assets of the debtor before it. Nevertheless, the Courts of the United States ought not be misused by a litigant in a matrimonial action as a sword against the other spouse, without strict and scrupulous scrutiny to ensure no overbearing or unfair advantage. It is inconceivable that Congress intended that the Bankruptcy Code be used to such a purpose.

*D'Atria v. D'Atria,* 242 N.J.Super. at 408–409, 576 A.2d 957.

10. At the hearing held in this court it appears that the debtor's corporation, Showcase Tile, Inc., has since been liquidated by its trustee in bankruptcy. The Paramus store is no longer in business. The debtor is now an employee of a tile store in which he has no interest.

11. After both sides had rested, the plaintiff voluntarily withdrew the Second Count in her complaint which charged the debtor with embezzling and misappropriating assets from the "creditors of the Showcase Tile bankruptcy estate ... for his own personal use and benefit." The plaintiff conceded that she was not a creditor of the estate of Showcase Tile.

12. The plaintiff also voluntarily withdrew the Fifth Count in her complaint which charged that the debtor "with the intent to hinder, delay or defraud Mirella, transferred, removed and concealed assets of his and the Showcase Tile's bankruptcy estate." There was no proof submitted to support this allegation insofar as it related to the debtor. Although Showcase Tile, Inc. may have engaged in questionable conduct to the detriment of its creditors, the plaintiff was not a creditor of Showcase Tile, Inc. In any event, any such alleged conduct on the part of Showcase Tile, Inc. would only have enhanced the debtor's individual estate for the benefit of his personal creditors, including the plaintiff.

13. The Third Count in the complaint was partially dismissed by the court on motion made by the debtor on the ground that the plaintiff failed to sustain the allegations as they relate to the restrictive covenant. It was held that the seven-mile restrictive covenant in favor of Fuda Tile was not "in the nature of alimony, maintenance and support" as alleged in the complaint. Any indirect benefit that might accrue to the plaintiff as a 10% shareholder of Fuda Tile cannot be regarded as in the nature of alimony, maintenance and support within the meaning of 11 U.S.C. § 523(a)(5). Moreover, the plaintiff specifically waived spousal support in Article II of the Agreement.

14. The Fourth Count was also dismissed. This count alleged that the debtor knowingly and willfully violated the restrictive covenant by opening and operating a tile store within the seven-mile radius of a Fuda Tile store, with the result that such "competition with the Fuda chain directly reduces the amount of income available to Mirella from Fuda Tile." Not only was there no proof as to any injury to Fuda Tile as a result of the alleged competition, but the plaintiff has no standing to assert rights on behalf of the separate corporate entity, Fuda Tile, notwithstanding that she is a 10% shareholder of Fuda Tile. Accordingly, the plaintiff failed to establish a case under 11 U.S.C. § 523(a)(6), as asserted in the Fourth Count.

15. The only remaining counts in the complaint for consideration are Count One and part of the Third Count. Count One alleges that the debtor induced the plaintiff into entering into the Settlement Agreement and transferring property to the debtor "by false pretenses and false representation and fraud" as proscribed under 11 U.S.C. § 523(a)(2). In essence, Count One charges that when he executed the Agreement, the debtor had no intention of honoring any of his obligations to the plaintiff, including the restrictive covenant and the payment of the $80,000.00 second mortgage on the Ramsey store and the former marital residence.

The portion of Count Three that remains for determination, is whether the debtor's failure to pay the $80,000.00 second mortgage debt is a nondischargeable indemnification obligation in the nature of alimony and maintenance or support.

The Agreement has a separate section dealing with the debtor's support obligations for his children. Specific sums for child support are contained in the Agreement, as well as provisions for visitation rights.

16. The debtor testified that he had no intention to violate the seven-mile restriction and that before he signed the Agreement he checked the mileage with his automobile from the proposed Showcase Tile store in Paramus, New Jersey to the closest Fuda Tile store, which was in Elmsford, New York. He determined that the distance was approximately seven and one-half miles. However, the Agreement employs the term "radius" which means as the crow flies. The state court found that on a "radius" basis, the Showcase Tile store was within the seven-mile restriction. On the other hand, the state court in New Jersey found that the debtor arrogantly disregarded the Agreement incorporated in the divorce judgment. However, the court did not find that the debtor had no intention of complying with his obligations under the Agreement *before* he entered into it, or that he had any secret reservations as to compliance when he signed the Agreement. The fact that the debtor disregarded the seven-mile restriction does not mean that the debtor induced the plaintiff to enter into the Agreement by fraud or false pretenses.

17. Not only was there no credible evidence that the debtor fraudulently induced the plaintiff to enter into the Agreement by reason of false pretenses as to the seven-mile restriction, but there was a lack of credible evidence that he had no intention of honoring his obligations to the plaintiff, including his obligation to pay the $80,000.00 second mortgage from the proceeds of the proposed sale of the Union, New Jersey real estate. Showcase Tile sold the Union, New Jersey property and netted approximately $174,000.00 from the sale. The debtor did not thereafter pay off the $80,000.00 second mortgage, which was secured by a lien on the Ramsey store and the marital residence. However, Showcase Tile, used a portion of the proceeds from the sale of the Union, New Jersey property to purchase the Ramsey store. The debtor applied $80,000.00 from the proceeds of the Union, New Jersey sale to acquire the Ramsey property. Pursuant to the Agreement incorporated in the divorce judgment, the debtor transferred the Ramsey store to the plaintiff, which she operated and thereafter transferred to an affiliate corporation of Fuda Tile. The debtor argues that although he did not pay the $80,000.00 secured mortgage debt with the proceeds from the sale of the Union, New Jersey property, he did put the proceeds into the purchase of the Ramsey store, which was subsequently transferred to the plaintiff pursuant to the Agreement. Hence, the debtor maintains that the plaintiff received the fruit of his $80,000.00 obligation when he transferred the Ramsey store to her.

18. In short, the plaintiff failed to prove that the debtor never intended to pay the $80,000.00 mortgage debt when he entered into the Agreement incorporated in the divorce judgment. Although he failed to satisfy this debt from the proceeds of the sale of the Union, New Jersey property, the plaintiff, nevertheless, indirectly benefitted from the proceeds of sale to the extent of $80,000.00 because the debtor transferred the Ramsey store to her, which was acquired with the proceeds from the sale of the Union, New Jersey property. While the debtor may have breached his obligation under the Agreement to satisfy the $80,000.00 second mortgage on the Ramsey store and the marital residence, it cannot be concluded that the debtor did not intend to pay this obligation when he signed the Agreement and that he fraudulently induced the plaintiff to enter into the Agreement because he had a secret reservation not to honor his $80,000.00 obligation to the plaintiff.

19. There remains for consideration whether or not the debtor's obligation under the Agreement to satisfy the $80,-

000.00 second mortgage debt against the former marital residence constitutes an obligation in the nature of alimony, maintenance and support, as alleged in the Third Count in the complaint. This issue must be answered in the negative because the parties clearly and unequivocally, in writing, waived alimony, maintenance and support in Article II of the Agreement in consideration of the properties which were transferred to each by the other. The plaintiff's matrimonial attorney testified that the $80,000.00 second mortgage had to be paid off by the debtor so that the plaintiff could support herself and her children. However, the Agreement specifically delineates the debtor's obligations for his children and details the nature of the custody payments he must make. The $80,000.00 second mortgage assumption by the debtor was clearly included in the provisions of the Agreement dealing with equitable distribution of the parties' property interests. The child support provisions were separately stated in another portion of the Agreement dealing with custody and child support. The subject of alimony, maintenance and support was expressly covered under Article II of the Agreement wherein both parties specifically waived in writing any spousal support.

20. The debtor's $80,000.00 second mortgage obligation to the plaintiff is part and parcel of a property settlement and is not in the nature of alimony, maintenance or support.

## DISCUSSION

### Fraud

■ The debtor's failure to honor his obligations under the written Agreement between the parties, which was incorporated in a final judgment of divorce, without more, does not mean that the plaintiff was fraudulently induced to enter into the Agreement or that the debtor had fraudulently intended not to honor his obligations when he signed the agreement. A breach of contract is not tantamount to fraud. "[A] promise without preconceived and undisclosed intention of not performing it only gives rise to an action for breach of contract if the failure to perform is material in nature." *In re Domestic Fuel Corp.,* 79 B.R. 184, 194–95 (Bankr.S.D.N.Y.1987), *citing, In re Lawrence,* 1 B.R. 402, 405 (Bankr.S.D.N.Y.1979). In order for the aggrieved party to the contract to prevail on a claim for fraud in such case, there must also be proof that the other party had no intention of honoring the obligation imposed under the contract when it was signed. *In re Overmyer,* 30 B.R. 127, 132 (Bankr.S.D.N.Y.1983); *In re Pannell,* 27 B.R. 298 (Bankr.E.D.N.Y.1983).

In the instant case, the plaintiff simply established that the debtor failed to satisfy an $80,000.00 second mortgage lien as required under their Agreement incorporated in their divorce judgment. The plaintiff also showed that the debtor violated a seven-mile radius in a restrictive covenant relating to specific stores operated by Fuda Tile, a corporation owned by the plaintiff's family and in which she held a 10% shareholder interest. The plaintiff did not produce any credible evidence of fraud or extrinsic facts to show that the debtor fraudulently induced her to enter into the Agreement or that the debtor had no intention of honoring his obligations under the Agreement when he signed it. His subsequent breach of contract cannot retroactively be characterized as premeditated fraud without proof that the Agreement was tainted by fraud attributable to the debtor when he entered into the Agreement.

### Spousal Support

■ The plaintiff cites this court's decision in *In re Altchek,* 124 B.R. 944 (Bankr.S.D.N.Y.1991) in support of her position that the debtor's agreement to satisfy the $80,000.00 second mortgage lien against the Ramsey store and their former marital residence is nondischargeable under 11 U.S.C. § 523(a)(5) as in the nature of alimony, maintenance or support. In the *Altchek* case it was held that the thrust of an oral stipulation in open court involving the husband's assumption of a mortgage debt, which stipulation was incorporated in a divorce decree, was to keep the family in the marital residence and nondischargeable in

the nature of support and maintenance. However, the *Altchek* case is distinguishable from the instant case in that the oral stipulation, unlike most Separation Agreements, was not divided into separate headings as Visitation, Custody, Property Division and Alimony and Maintenance. Therefore, based on the facts in that case, it was found that the parties intended to create an obligation of support through the debtor's assumption of the bank obligation with respect to the marital residence. The debtor's payment of the bank obligation was a supplement to the inadequately low, direct support payment the debtor was willing to pay.

In the instant case the parties expressly stated in writing that in exchange for certain transfers to each other, and in light of their circumstances, each spouse expressly waived alimony, maintenance and support. Additionally, the carefully negotiated and drafted Agreement was divided into separate headings as Visitation, Custody, Equitable Property Distribution and Spousal Support. The $80,000.00 second mortgage debt assumed by the debtor was addressed under the heading entitled Equitable Property Distribution. The facts in this case more closely approach those in this court's decision in *In re Freyer*, 71 B.R. 912 (Bankr.S.D.N.Y.1987), *aff'd* 87 Civ. 3540 (S.D.N.Y. Nov. 13, 1987, Goettel, D.J.) where the obligation in question was clearly dealt with under the separate heading dealing with property settlements. Moreover, the parties in the instant case have unequivocally waived in writing any right to claim from the other alimony, maintenance or support. The plaintiff cannot overcome her own self-imposed waiver.

The plaintiff also relies upon *In re Gianakas*, 917 F.2d 759 (3rd Cir.1990) for the proposition that a husband's assumption of a second mortgage on their former marital residence should be regarded as in the nature of alimony, maintenance or support. There the court concluded that the parties must have intended that the payment of the second mortgage should serve as a contribution toward maintenance and support because based on the parties' financial circumstances at the time of the settlement agreement, the wife would not have been able to maintain the family home without additional support payments from the husband. The court noted that the "provision for the family home is, together with food and transportation, one of the traditional components of support and maintenance". *Id.* at 764. However, in that case, the husband had agreed in the settlement agreement to pay alimony to the wife for a specific period, so that there was no express waiver of alimony, maintenance and support, as in the instant case. Thus, the obligation to pay a mortgage lien against the family home could be regarded as in the nature of alimony, maintenance and support because the facts and circumstances in a given case might create an implied obligation of alimony, based on the intent of the parties.

In the instant case, the parties acknowledged in the Agreement that they had their respective rights and duties fully explained to them by their respective counsel and that they "forever, release *waive* and discharge the other from right, duty or obligation for alimony, support or maintenance either temporary or permanent." (Emphasis added). This express, written waiver bars any implied obligation of support and maintenance arising from the debtor's assumption of the second mortgage obligation in connection with property settlement provisions in that portion of the Agreement dealing with equitable distribution provisions.

Accordingly, the plaintiff has failed to sustain her burden of establishing that the debtor's $80,000.00 second mortgage obligation is nondischargeable as actually in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5). *See Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986); *Long v. Calhoun, (In re Calhoun )*, 715 F.2d 1103 (6th Cir.1983); *Pauley v. Spong, (In re Spong )*, 661 F.2d 6 (2d Cir.1983).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28

U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The plaintiff failed to sustain her burden of proof that the debtor induced the plaintiff into entering into the Settlement Agreement by false pretenses and false representation and fraud, as proscribed under 11 U.S.C. § 523(a)(2).

3. The plaintiff failed to sustain her burden of proof that the $80,000.00 second mortgage debt on the Ramsey store and their former marital residence, which the debtor assumed under the Settlement Agreement, was nondischargeable as in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5).

4. The plaintiff failed to sustain her burden of proof that the debtor had no intention of honoring his obligations under the Settlement Agreement when he entered into it as part of the final judgment of divorce, including the obligation with respect to the seven-mile business restriction and the $80,000.00 second mortgage debt which he assumed.

5. The balance of the complaint which was not dismissed at the conclusion of the hearing in this matter shall be dismissed as not having been sustained by the plaintiff on the basis of the preponderance of the evidence in this case.

SETTLE ORDER on notice.