**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICHARD A. CLINE,

      Plaintiff-Appellant,

v.

DONNA R. CLINE,

      Defendant-Appellee.

No. 05-6348
(BAP No. WO-04-069)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

Appellant Richard A. Cline appeals from a decision of the Bankruptcy

Appellate Panel of the Tenth Circuit (BAP) affirming a decision of the United

States Bankruptcy Court for the Western District of Oklahoma. The bankruptcy

court ruled that a $250,000 divorce-related debt Mr. Cline owed to his ex-wife,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

appellee Donna Cline (the $250,000 obligation), was in the nature of spousal support and therefore could not be discharged in his Chapter 7 bankruptcy.[1] Mr. Cline argued that the $250,000 debt was not support and was susceptible to discharge as part of a property settlement. On appeal by both parties, the BAP affirmed the bankruptcy court's decision on the ground that no basis for reversal existed because the exhibits from the bankruptcy court hearing, including the divorce decree and settlement agreement, had not been included in the record. Mr. Cline filed a motion for rehearing in which he argued that copies of the divorce decree and settlement agreement were not necessary to the BAP's determination because there was no dispute concerning the wording of those documents or with the bankruptcy court's representation of the content of those documents. Mr. Cline argued that the bankruptcy court error was related not to its reading of the provisions of the divorce decree and settlement agreement–which expressly stated that the $250,000 obligation was part of a property settlement–but instead to the court's determination that the parties intended the $250,000 obligation to function as support despite the agreement's express statements to the contrary. Mr. Cline's motion for reconsideration was denied by the BAP and he filed his notice of appeal in this court.

---

[1]     Despite the fact that the parties are no longer married we shall continue to refer to defendant-appellee as "Mrs. Cline" solely for ease of use and consistency with the record.

On appeal, Mr. Cline argues (1) that the BAP erred in affirming the bankruptcy court's decision on the ground that the record before the BAP did not include the trial exhibits, (2) that the bankruptcy court erred in finding that the $250,000 obligation was in the nature of support, and (3) that such a finding violated the *Rooker-Feldman* doctrine.

## ANALYSIS

The parties agree that this case is controlled by *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717 (10th Cir. 1993). As in *Sampson*, we are faced with application of 11 U.S.C. § 523(a)(5). That statute provides that debts to a "former spouse . . . for alimony to, maintenance for, or support of such spouse" may not be discharged in Chapter 7 bankruptcy proceedings provided that "such liability is actually in the nature of alimony, maintenance, or support,". 11 U.S.C. 523(a)(5) (2002). "Whether an obligation to a former spouse is actually in the nature of support is a factual question subject to a clearly erroneous standard of review." *Sampson*, 997 F.2d at 721. "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002). We have also held that "[t]he bankruptcy court's findings should not be disturbed absent the 'most cogent reasons in the record.'" *In re Goin*, 808 F.2d 1391, 1393 (10th Cir. 1987) (per curiam) (quotation omitted).

-3-

As noted above, the BAP ruled that without the trial exhibits, affirmance was the only option.[2] While we agree with Mr. Cline that resolution of his argument does not require review of the actual settlement agreement, reversal is not required on this ground because "[o]n appeal from BAP decisions, we independently review the bankruptcy court's decision. [W]e review the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard." *In re Commercial Fin. Servs., Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (quotations and citations omitted). Consequently, we must independently review the record on appeal and determine whether reversal is appropriate.

We must, however, delineate the record on which our decision must be made. Generally, under Fed. R. App. P. 6(b)(2)(B)(i), the party appealing to this court files "with the clerk possessing the record assembled in accordance with Bankruptcy Rule 8006 [either the clerk of the district court or the clerk of the BAP] . . . a statement of the issues to be presented on appeal and a designation of the record to be certified and sent to the circuit clerk." In this case, then, the record, strictly under Fed. R. App. P. 6, would consist of the redesignated portions of the BAP record, the proceedings that occurred in the BAP, and a

---

[2] We note that the BAP did not dismiss Mr. Cline's appeal as a sanction for his failure to include the trial exhibits in the record, it simply concluded that without the exhibits there was not sufficient record support for Mr. Cline's arguments.

-4-

"certified copy of the docket entries prepared by the clerk under Rule 3(d)." *Id.* at sub-paragraph iii. Because 10th Cir. R. 6.1 provides that rules 30.1-30.3 of the tenth circuit apply to all bankruptcy appeals, however, a party appealing to this court from a ruling of the BAP files an appendix containing the necessary portions of the BAP record. The record on appeal then consists of the portions of the BAP record that Mr. Cline has provided in his appendix, the BAP proceedings, and the docket.

With the record before us, we turn to Mr. Cline's argument that the bankruptcy court improperly applied this court's holding in *Sampson* in determining that his $250,000 obligation to his ex-wife was in the nature of support.

Under *Sampson*,

> whether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties's intent and the substance of the obligation. The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence [(1)] that the parties intended the obligation as support and [(2)] that the obligation was, in substance, support.

997 F.2d at 723. Mr. Cline argues that the bankruptcy court erred in finding that the parties intended the $250,000 obligation as support, claiming that the bankruptcy court based its decision solely on the parties' intent without inquiring into whether the obligation was, in substance, support. We disagree.

"The parties' intent is the 'initial inquiry' to determine whether a debtor's obligation to his or her former spouse is actually in the nature of alimony, maintenance or support." *Id*. (quoting *In re Yeates*, 807 F.2d 874, 878 (10th Cir. 1986). "'A written agreement between the parties is persuasive evidence of intent.'" *Id*. (quoting *Yeates*, 807 F.2d at 878).

> According to the bankruptcy court the settlement agreement provided that:
>
> husband will pay the wife $250,000 within 12 months of the divorce decree and, upon receipt of the payment she will then transfer certain real property to him. The obligation to pay the $250,000 is unconditional and is not dependent upon success in recovery on the business claims.

Aplt. App. at 191. Although the divorce decree and the settlement agreement from the divorce are not part of the record on appeal, it is clear from the bankruptcy court's decision that the settlement agreement specified that the $250,000 obligation was to be considered part of the property settlement and that the settlement agreement also contained an express waiver of alimony by Mrs. Cline.[3] Mr. Cline does not dispute these findings as to the contents of the provisions in the settlement agreement.

---

[3] The bankruptcy court also acknowledged that this provision was found in a section of the settlement agreement entitled "SETTLEMENT OF ANTICIPATED REVENUES FROM CORPORATE ENTITITES," and that testimony indicated that the husband's businesses had claims against other entities that both parties believed that the $250,000 would probably be paid from the substantial recovery that was anticipated from these claims. Aplt. App. at 191. As noted above, however, the obligation was unconditional and was not made dependent on success in recovery on the business claims.

How the obligation is treated in the settlement agreement, however, is only *persuasive evidence* of the parties' intent, and we held in *Sampson* that "§ 523(a)(5) requires federal courts to look beyond the label which the parties attach to an obligation." 997 F.2d at 722. In *Yeates* this court held that the determination of the parties' intent "must be made by looking at the substance of the agreement viewed in the crucible of surrounding circumstances." 807 F.2d at 878 (quotation omitted). In the case of *In re Goin* we set forth four factors to be considered when determining intent:

> (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.

808 F.2d at 1392-93. Similarly, in *Sampson*, we held that a "Plaintiff's obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement." *Id*. at 725. "[S]uch a presumption [as to intent] is proper regardless of the label attached to the obligation either in the settlement agreement or in the parties' own minds," since "'the crucial issue is the function the award was intended to serve.'" *Id*. (quoting *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983)).

As to Mrs. Cline's need for support at the time of the divorce, we hold that the bankruptcy court did not commit clear error when it found that Mrs. Cline "had no significant employment prospects, at least such as would allow her to continue her standard of living, she had a meager education, no independent income and she most likely had a need for support at the time the divorce was decreed." Aplt. App. at 192. Mr. Cline's argument is basically that it was clear error to rule that despite the clear wording of the settlement agreement the parties intended the $250,000 obligation to be in the nature of support because Mrs. Cline was "in good health and apparently had no impediment to seeking employment," Br. of Aplt. at 15, and that under the terms of the settlement agreement she was to have few debts or expenses.[4]

This is not enough to find clear error. The parties had been married for approximately twelve years and the marriage produced three children. Mrs. Cline had only a high school education with short university experience, had been employed in "some clerical and secretarial jobs" prior to the marriage but had no meaningful employment after the marriage, and had received a meager inheritance

---

[4] According to the bankruptcy court, under the agreement Mrs. Cline was to have a home provided by Mr. Cline free and clear of any liens. The settlement agreement further provided "for division of certain personal property, and for payment of health insurance premiums by the husband. It goes on to obligate the husband to pay various debts, particularly credit card statements and provides that [the parties] will each have certain horses." Aplt. App. at 191. The settlement agreement also provided that Mr. Cline would pay support for the minor children and also dealt "with college funds for the children, waiver of any claim to retirement annuities, and other miscellaneous provisions." *Id*. at 191-92.

from her father but had no other independent means of supporting herself. She had stayed home and cared for the children after they were born, which Mr. Cline wished her to do. Mr. Cline on the other hand earned approximately $13,000 per month in the oil and gas business and ran at least two companies engaged in this business. One of the factors that may be considered under *Goin*, is: "if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support." 808 F.3d at 1392. Here, it was clear that Mrs. Cline needed support and we are not left with "the definite and firm conviction" that the court made a mistake in ruling that the $250,000 obligation was intended to provide that support. *Miniscribe Corp.*, 309 F.3d at 1240.[5]

As for Mr. Cline's argument that the bankruptcy court failed to proceed to the second step of the *Sampson* test and find that the $250,000 obligation was "in

---

[5] Mr. Cline also raises a brief argument on appeal that he "was to pay support [to Mrs. Cline] in addition to his child support" under the terms of the settlement agreement. Br. of Aplt. at 15. Mrs. Cline disputes this claim, stating that the only support expressly granted in the settlement agreement was child support. We shall not address this argument as the only supporting citation in the Mr. Cline's brief is to the settlement agreement itself which we have held is not part of the record on appeal. More importantly, however, we can find no point in the bankruptcy court proceedings where Mr. Cline argued that the settlement agreement already obligated him to pay spousal support. To the contrary, his argument was that no support was granted and the transcript shows that Mr. Cline agreed that "child support" and "reimbursement for medical" were the only monies to be paid to Mrs. Cline under the settlement agreement. Aplt. App. at 145.

substance" support, and that such a finding could not be proper without evidence of Mrs. Cline's monthly expenses, we find no reversible error. Here, the court found Mrs. Cline's need of support was so obvious as to indicate that the parties intended for the provision in question to constitute support, despite the settlement agreement's specific language to the contrary. All of the court's findings as to Mrs. Cline's need for support would apply with equal weight to the second step of *Sampson*. While the better practice would have been for the bankruptcy court to have acknowledged the fact that it also considered $250,000 obligation to be "in substance" support, it would be a waste of judicial resources to reverse simply for this finding to be made. Nor do we believe that evidence of Mrs. Cline's monthly expenses was a necessary prerequisite to the bankruptcy court's ruling. Mrs. Cline had spent the twelve years of the couple's marriage as a homemaker and had limited educational and work experience prior to the marriage. We find no clear error in the bankruptcy court's finding that a one-time $250,000 payment was in substance support without requiring specific evidence of what Mrs. Cline's monthly expenses were going to be.

Mr. Cline's final argument is that the bankruptcy court's decision violated the *Rooker-Feldman* doctrine.[6] We disagree.

---

[6] "The *Rooker-Feldman* doctrine traces back to Justice Willis Van Devanter's seminal opinion in *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and its elaboration in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)." *Tal v.*

(continued...)

The *Rooker-Feldman* doctrine prohibits a lower federal court both from considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment. A claim is inextricably intertwined if the state-court judgment caused, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*.

*Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (quotations and citations omitted). "The determination of whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance, or support[, however,] is a matter of federal bankruptcy law." *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir. 1989). Consequently, the state divorce decree, and the settlement agreement calling the $250,000 obligation a property settlement, did not "decide" the issue of whether the obligation was in the nature of support for the purposes of bankruptcy. The *Rooker-Feldman* doctrine is therefore not applicable.

The judgment of the bankruptcy court is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Chief Circuit Judge

---

[6](...continued)
*Hogan*, 453 F.3d 1244, 1255 n.9 (10th Cir. 2006)

-11-

05-6348, *Cline v. Cline*
**O'BRIEN**, dissenting:

Because the majority decision is contrary to our precedent and the clearly expressed intent of both parties at the time they entered into their divorce decree and settlement agreement, I must respectfully dissent. "[T]he critical inquiry is the *shared* intent of the parties at the time the obligation arose." *Sampson v. Sampson, (In re Sampson)*, 997 F.2d 717, 723 (10th Cir. 1993) (*citing Tilley v. Jessee,* 789 F.2d 1074, 1078 (4th Cir. 1986)) (emphasis added). Both the settlement agreement and the circumstances point but one way, Mrs. Cline agreed with Mr. Cline to waive spousal support in exchange for a debt-free new beginning, a one-time property settlement payment, and substantial child support payments. Although a discharge of the settlement payment in Mr. Cline's bankruptcy substantially changes Mrs. Cline's payoff, it does not change the parties' intent at the time of the settlement agreement.

We "begin with the assumption that dischargeability is favored under the Code." *Tilley,* 789 F.2d at 1077. Mrs. Cline must prove by a preponderance of the evidence that (1) she *and Mr. Cline* "intended the obligation as support *and* [2] that the obligation was, in substance, support." *Sampson*, 997 F.2d at 723 (emphasis added). While we look to both the parties' agreement and the surrounding circumstances, our inquiry "does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted." *Id.*

"[A] written agreement [between the parties] is persuasive evidence of intent." *Tilley*, 789 F.2d at 1077. "[I]f the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir. 1986). In this case, there can be no doubt regarding the parties' written intent.

The testimony at Mr. Cline's bankruptcy hearing revealed a carefully drafted settlement agreement listing the $250,000.00 payment under the Property Settlement section. The settlement agreement clearly states the payment was intended to distribute a potential award in a lawsuit. Child support was addressed in a separate section. And importantly, yet another section clearly and affirmatively waived both parties' rights to spousal support.[1] Even the

---

[1] Research has revealed no case law finding a support obligation when there is an express waiver of alimony and no specific language providing the property settlement is in lieu of alimony or spousal support. Indeed, the cases point in the opposite direction. *See, e.g., Yeates*, 807 F.2d at 879 ("[E]ven though one paragraph of the agreement purports to waive any right to alimony, the paragraph in which the debtor agrees to assume the Transamerica debt specifically states that such assumption was made 'in consideration of Plaintiff waiving her right to alimony.'"); *Osborne v. Osborne (In re Osborne)*, 262 B.R. 435, 443 (Bankr. E.D. Tenn. 2001) ("[T]he court is persuaded that the waiver of alimony language in paragraph 20 of the [Marital Dissolution Agreement] expresses the parties' intention that the Debtor's assumption of the three disputed joint debts not be in the nature of support. Both parties were represented by counsel throughout the divorce proceedings who agreed on behalf of the Plaintiff and Debtor to the alimony waiver language."); *Dennison v. Hammond (In re Hammond)*, 236 B.R. 751, 763 (Bankr. D. Utah 1998) ("The Decree was entered pursuant to the parties' stipulation and specifically and clearly provides that Dennison waived her right to

(continued...)

bankruptcy court recognized the affirmative waiver of alimony contained in the

settlement agreement "couldn't be more definitive." (R. App. at 190). Thus,

under our own precedent, there is no question the settlement agreement supplies

compelling evidence that the mutual intent of the parties creates a "substantial

obstacle" to the success of Mrs. Cline's claim. *Cf. Sampson*, 997 F.2d at 723

(Due to the agreement's structured drafting, the lack of testimony regarding

shared intent, and the express language of the agreement, we found "compelling

evidence that the parties intended the obligation as maintenance.").

The surrounding circumstances do not overcome this compelling evidence

of intent. *Goin v. Goin (In re Goin)*, 808 F.2d 1391, 1392-93 (10th Cir. 1987).

According to *Goin*, we first look to whether the agreement provides "explicitly

for spousal support." *Id.* at 1392. If it does not, we "may presume that the

property settlement is intended for support *if* it appears under the circumstances

---

[1](...continued)
alimony. The Decree, on its face, does not support Dennison's allegation that she waived alimony 'in lieu' of increased . . . [p]ayments."); *Fuda v. D'Atria (In re D'Atria)*, 128 B.R. 71, 77 (Bankr. S.D. N.Y. 1991) ("[T]he parties in the instant case have unequivocally waived in writing any right to claim from the other alimony, maintenance or support. The plaintiff cannot overcome her own self-imposed waiver."); *Casler v. Casler (In re Casler)*, 94 B.R. 741, 744 (Bankr. M.D. Fla. 1988) ("The most important and indicative fact supporting the conclusion that the obligation is dischargeable is the Plaintiff's express waiver of all alimony rights."); *In re Lang*, 88 B.R. 447, 448 (Bankr. S.D. Fla. 1988) (express waiver of alimony made "the actual intent of the parties . . . clear as a bell."); *Brunson v. Payne (In re Payne)*, 13 B.R. 481, 482 (Bankr. Nev. 1981) (in the absence of other evidence, an express waiver of alimony by the Plaintiff establishes an intent to treat the payment as a property settlement).

that the spouse needs support." *Id.* (emphasis added). The majority concludes there was no explicit provision for spousal support. Contrary to the majority's assessment, however, the agreement specifically and explicitly provided for spousal support; it was waived, *i.e.* $ 0. It is important to recognize Mrs. Cline agreed to this provision only after seeking advice from two attorneys – her attorney and a well-known bankruptcy attorney – in anticipation of her husband's bankruptcy filing. This is yet another reason to give weight to the written agreement in that we look to the surrounding circumstances primarily because "it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 762 (3d Cir. 1990) (quotations omitted). The bankruptcy was clearly contemplated at the time of the settlement agreement. In addition, the Majority presumes Mrs. Cline's need for support without any exploration of her actual resources.

As to the second *Goin* factor – the presence of minor children and an imbalance of income – there was no determination in this case that the child support was inadequate to support the family, as was found in *Goin*. *Goin*, 808 F.2d at 1393 (Determining "$350 a month child support payments were not sufficient to provide the spouse and children with the standard of living to which they had grown accustomed."). Neither was there "evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as

-4-

food, housing and transportation" as there was in *Yeates*. 807 F.2d at 879; *see also Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983) ("Provisions to pay expenditures for the necessities and ordinary staples of everyday life may reflect a support function.") (quotations omitted); *Gianakas*, 917 F.2d at 764 ("[P]rovision for the family home is, together with food and transportation, one of the traditional components of support and maintenance.").

The third and fourth factors – installment payments terminating on remarriage or death – are equally inapplicable in this case. The payment was intended to be a one time event and the obligation did not terminate should Mrs. Cline remarry or die. Indeed, because Mrs. Cline did not know when the payment would be made within the next year, the funds could not function as a reliable source of ongoing income. In addition, the settlement agreement expressly states the function of the payment at the time of the divorce was to reduce to a sum certain the income from pending lawsuits in which the expectations of the actual recovery "changed vastly," waxing and waning over a period of time. (R. App. at 110.)

Nonetheless, the majority presumes the payment is support because Mrs. Cline did not have the education or experience to secure a job which paid sufficiently to maintain her lifestyle. However, without inquiry into her resources, that is pure speculation – hardly a reliable basis for a decision. What we know is, with the assistance of divorce counsel and bankruptcy counsel, Mrs.

-5-

Cline agreed to waive exactly what she now seeks. Competent adults must be left with the consequences of their decisions, particularly when those decisions involve the evaluation of uncertain events. When events turn out differently than anticipated, the law does not allow one contracting party to choose another course of action at the expense of the other. Here, the parties designated the $250,000 payment as a property settlement in spite of the obvious tax advantage to the husband in designating it support. When asked by the bankruptcy judge why she waived alimony, Mrs. Cline responded because she understood support would come "partially from other methods; through having a debt-free life and, you know, no bills to pay and child support to help us."[2] (*Id.* at 95.) Notably absent from her explanation is an intention to rely on the $250,000 payment. I would find her candid response compelling evidence of the settlement agreement's accurate documentation of the parties' mutual intent and the essential function of the $250,000 payment as a property settlement. Coupled with her express waiver of spousal support, it should be determinative.

With the benefit of 20/20 hindsight, the bankruptcy judge probably reached a fair result. It is one I would embrace if it were not contrary to law. However, in the face of the settlement agreement it is not enough to merely say Mrs. Cline

---

[2] The settlement agreement provided for substantial child support and Mr. Cline's assumption of all consumer and tax debt. Mr. Cline also provided Mrs. Cline with her choice of their former home or a new home. Mrs. Cline chose to reside in a new home paid for by the sale of several properties owned by Mr. Cline's businesses. Mrs. Cline received over $8,000.00 in cash at the time of closing.

needed support. Mr. Cline was not required to prove the obligation was as labeled, a property settlement. Instead, it was Mrs. Cline's burden to show the parties' intended the payment, in effect, to be support. She did not do so. Under our case law, I see nothing that overcomes the substantial obstacle created by the compelling evidence of the parties' mutual intent as evidenced by the settlement agreement. Consequently, I am "left with the definite and firm conviction that a mistake has been made." *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quotations omitted). I would reverse the decision of the bankruptcy court and remand for further proceedings.